(27 Misc. Rep. 459.)

MEAD et al, v. MEAD et al.

(Supreme Court, Special Term, New York County. May, 1899.)

1. DOWER—PRIORITY OF MORTGAGE.
Plaintiffs, who wished to vest in their father the income of real estate, but not the entire beneficial interest, conveyed to him by deed, and received from him a mortgage, in which the mortgagor's wife did not join. *Held*, that the wife's right of dower was subject to the mortgage, since it was, in effect, a purchase-money mortgage.

2. MORTGAGES—COLLATERAL AGREEMENTS—MERGER.
Parol agreements between the mortgagor and mortgagee relating to time of foreclosure do not affect the rights of the mortgagee as fixed by the mortgage, as such agreements become merged in the written instrument.

**8. DOWER—PRIORITY.**

A wife's right of dower in land on which the husband gave a purchase-money mortgage in which she did not join is not prior to the lien of a mortgage merely because the mortgagee agreed with the mortgagor that the mortgage should not be foreclosed until after the mortgagor's death.

Action by Annie Helena Mead and others against Agnes Mead and others. Judgment for plaintiffs.

E. S. Peck, for plaintiffs.

Gratz Nathan and Geo. F. Mertens, for defendants.

RUSSELL, J. In 1891, Lawrence Mead, the father of these plaintiffs and of Roger A. Mead, then being a widower, contracted a valid common-law marriage with Mrs. Agnes Mead,—one on which she is entitled to stand, and by which the children that she afterwards had were legitimate. The subsequent ceremonial marriage by a priest was simply a ratification of the original marriage, and in no manner impaired the validity of the original agreement between the parties. Agnes Mead was the lawful wife of Lawrence Mead at the time of the transaction of December, 1892. In that month, there being a settlement of the estate of the grandmother, through whom these three children took, I suppose, by virtue of representation from their deceased mother, the daughter of the grandmother, the evidence being silent upon that subject,—through the will of the grandmother, as is conceded,—and a settlement of that estate being had then, the father having no business except such as had been necessary to look after the estate of the grandmother, it occurred to the children that some provision should be made for the support of the father, so that he might have means for the wants, which were small, which he would have in the future. His age does not appear in the case. The father had been trustee of that estate, or one of the trustees, and, at all events, acted as such; so that he not only stood in the position of a father to the children during the period of their minority and later, but was also active trustee for them in the management of their interests in that estate. As a matter of course, the duties were imposed upon him which follow such a confidential relation. He could do no act to the detriment of his wards or those who occupied the position of cestuis que trustent in regard to him, but had a right, if the transaction was fair, to accept any beneficial arrangement which they might make. The arrangement was made by which he was to be deeded No. 272 West Thirty-Eighth street, with the understanding that the property was to furnish him an income necessary to his wants, and, as the evidence discloses, not giving to him the entire actual beneficial control of the entire rights, but such as were essential to his needs, although he actually received the payments of the rents until May or July, 1897, or a little later. By that conveyance, which was then made, these two daughters, who had been given the one-third interest belonging to Roger, their brother, for the purpose of carrying out this arrangement, in which his wife joined, surrendered apparently the entire title to that property. It would have been a very improvident and improper arrangement if no security had been taken back. Dis-

cussion was had as to the various forms for securing them against·
all possible contingencies which .might militate against their ulti-
mate resumption of the property. They sought the advice of Mr.
Arrowsmith and his managing clerk, Mr. Dunn. Accordingly, an
arrangement was made by which a mortgage was executed as the
instrument securing back to those two sisters and daughters their
rights in that property beyond any question or power of attack. It
had been talked, prior to the selection of the proper form of instru-
ment, that the daughters were to have the power to recall the act
of giving this house to their father, but all of the preliminary talks
were merged in the agreement which was made by which the mort-
gage was taken as the definite security for their protection. That
instrument was either a valid instrument or it was an· invalid in-
strument. I regard it as a valid instrument, and one which the
mortgagor could not repudiate after he had received the benefit of·
the transaction by the deed, and the receipts of the proceeds from
the property in after years. Being a valid instrument, all of the talk
was merged in the execution of the papers, and all of the conversa-
tion had in regard to it is not in any manner antagonistic to the
paper itself, as the final execution or consummation of the transac-
tion between the parties. It was essentially a purchase-money mort-
gage. It was a mortgage given back by the purchaser, the gran-
tee of the premises, to the grantor, to secure an interest which the
grantee was to pay. It was evidently regarded as a purchase-money
mortgage. If Lawrence Mead was married at the time, and he knew
that he was married, it was his manifest duty, in order to avoid a
charge of fraud, to disclose the fact of his marriage, unless it made
no material difference whether he was married· or not. If he knew
it was a purchase-money mortgage, then he knew that his· wife did
not have to join in the execution of the mortgage. In that view he
is free from the charge of fraud, but that fact establishes the valid-
ity of the mortgage as against Mrs. Mead. Being a purchase-money
mortgage, Mrs. ·Mead's rights cannot fasten upon property except
subject to the mortgage itself. Viewing the transaction, the deed
and mortgage taken together, there was conveyed to him only the
residuum .of the property after the mortgage was carved out of it.
The other defense that a collateral agreement was made that the
mortgage was not to be foreclosed or enforced until the death of
Lawrence Mead is substantially disposed of by the considerations
which I have alluded to, and, the agreement being an oral agree-
ment, the conversation was merged in the execution of the papers.
But there is an additional consideration that Mrs. Mead never had
any interest in these premises except subject to the mortgage itself..
A wife has an. inchoate right to dower which only gives her a right
to the use of one-third of the real estate of her husband after his
death, if she survives him. The agreement that defendant expressly
sought to prove was that .the mortgage was not to be enforced until
after the death of Lawrence Mead. If proven, then it would be
proven that the very instant of time at which the breath of Law-
rence Mead passed away, and Mrs. Mead became entitled, as his
wife, to the widow's right, that very instant that mortgage was in

force. So that the accruing of her rights would be in fact coeval with the accruing of the rights of the daughters to foreclose the mortgage according to the agreement which defendant has tried to prove. I think the claim of the daughters is superior to the widow's dower. There is no answer making any issue on the behalf of the infants, but merely the general guardian ad litem's answer, and therefore no issue is raised in this case on behalf of those who succeeded to the title of Lawrence Mead. But, if there was any such issue, and if the court finds it necessary to guard the interests of the infants, the same considerations appertain to show that the infants received no title to those premises except subject to the mortgage in question. Judgment for the plaintiffs for the foreclosure, with costs.

Judgment for plaintiffs, with costs.